**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RITA MEDICAL SYSTEMS, INC.,

    Plaintiff,

  v.

RESECT MEDICAL , INC.; and STEVEN DANIEL,

    Defendants.
                                        /

No. C 05-03291 WHA

**ORDER DENYING PRELIMINARY INJUNCTION AND VACATING HEARING**

## INTRODUCTION

In this dispute between manufacturers of medical products, plaintiff Rita Medical Systems, Inc. moves for a preliminary injunction against defendants Resect Medical, Inc. and Steven Daniel. This order finds that the combination of lack of probable success on the merits and absence of hardship weighs against granting the requested relief. Plaintiff's motion is, therefore, **DENIED**.

## STATEMENT

Plaintiff Rita develops, manufactures, and markets ablation-technology products used by physicians to treat patients with tumors. Ablation generally involves the surgical excision of body tissue. Defendant Resect also develops, manufactures and markets instruments for surgical resection using ablation technology. Defendant Daniel worked at Rita from 1999 to

1  2003 in Rita's research-and-development group. Daniel was director of product development at
2  the time he left the company. After leaving Rita, Daniel founded and incorporated Resect.

3  Rita filed an action against defendants on August 12, 2005. Plaintiff's complaint alleged
4  the following claims: (1) breach of written contract against Daniel, (2) misappropriation of
5  trade secrets against Resect and Daniel, (3) breach of fiduciary duty against Daniel, (4) false
6  association under 25 U.S.C. 1125 against Resect, (5) intentional interference with prospective
7  economic relations against Resect and Daniel, (6) breach of covenant of good faith and fair
8  dealing against Daniel, and (7) unfair competition under California Business and Professions
9  Code § 17200 against Resect and Daniel.[1]

10  One of Resect's products is called the InLine Bipolar Coagulator. Some hospitals use
11  the InLine together with Rita's radiofrequency ("RF") generators. Rita apparently discourages
12  the use of the devices in tandem, contending that the compatibility of the two devices is
13  uncertain and untested. Rita maintains that there have been several accidents involving the use
14  of the devices together. The first such accident, which purportedly involved a failed surgical
15  resection at Brigham & Women's Hospital in Boston, Massachusetts, occurred on February 27,
16  2006 (Bliss Decl. ¶ 10, filed under seal; Sutton Decl. ¶ 10, filed under seal). The second
17  accident, a failed laparoscopic resection at the hospital for the University of Iowa, took place on
18  April 11, 2006 (Nash Decl. ¶ 9, filed under seal). There have also apparently been several
19  computer malfunctions relating to the interaction of the InLine and Rita's generators.[2]

20  According to Rita, Resect has nevertheless made and continues to make purported
21  misrepresentations touting the compatibility of the InLine with Rita's RF generators. Rita also
22  contends that Resect has made misrepresentations that a software update to Rita's RF generators
23  has caused the instances of incompatibility with the InLine. Rita also argues that its reputation

---

[1] On May 18, 2006, this Court issued an order granting in part and denying in part defendants' motion for partial summary judgment regarding plaintiff's trade-secret claim. The May 18 order held that plaintiff's customer list was a protectable trade secret, but held that the remainder of plaintiff's purported trade secrets did not merit protection. In order to allow for plaintiff to ultimately challenge the denial of trade secret status, the purportedly confidential materials submitted in this action have been kept under seal.

[2] The question of whether the evidence of these accidents is even admissible is discussed below.

2

is being tarnished, as physicians believe Rita is responsible for the malfunctioning and incorrectly assume the InLine and the RF generators are produced by the same company.

Accordingly, Rita now moves for a preliminary injunction, pertaining to Rita's claims under the Lanham Act and Section 17200, to stop defendants from making representations as to the compatibility of the InLine and Rita's generators, and to stop defendants from blaming Rita's software update for malfunctioning due to incompatibility. Rita initially sought this preliminary injunction and temporary restraining order on an expedited basis on May 8, 2006. The following day, finding no good cause to proceed on plaintiff's motion on an emergency basis, the Court issued an order denying Rita's request for expedited relief. On June 2, the Court made clear that the denial of expedited relief meant that Rita's motion was denied, without prejudice to Rita to seek a preliminary injunction on a fully-noticed motion. Rita then brought the instant motion.

**ANALYSIS**

In the Ninth Circuit, to prevail on a motion for preliminary injunction:

> The moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in favor of the moving party.

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839–40 (9th Cir. 2001) (citation omitted); *see also Arcamuzi v. Cont'l Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987). "These standards 'are not separate tests but the outer reaches of a single continuum.'" *Stuhlbarg*, 240 F.3d at 840 (internal citation omitted).

### 1. PROBABLE SUCCESS ON THE MERITS.

"[T]he test for a preliminary injunction is 'probable success on the merits' or 'fair chance of success on the merits.'" *Johnson v. Cal. State Bd. of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995) (internal citations omitted); *see also Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (finding that probable success equates to a showing of "a fair chance of success").

3

Plaintiff frames its action as one for false association, under the Lanham Act, 15 U.S.C. 1125(a)(1)(A). Plaintiff's claim under California Business Code § 17200 is coextensive with its Lanham Act claim, thus plaintiff's probable success on these claims is considered together.[3]

Under Section 1125(a)(1)(A):

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which —
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

"A false association claim requires that the misuse of a trademark or other distinguishing device confuse consumers as to the origin, approval, or endorsement of the product." *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1110 n. 9 (9th Cir. 1992).

As an initial matter, plaintiff's false association claim appears to be *non-actionable*. In February 2004, Resect submitted a "Section 510(k) Pre-Market Notification" to the Food and Drug Administration under the Medical Device Amendments to the Food, Drug and Cosmetic Act, to authorize the marketing of the InLine (Daniel Decl. Exh. A). *See* 21 U.S.C. 321, *et. seq.*; 21 C.F.R. 807.87. Via Section 510(k) notifications:

> The Pre-Market Notification process requires applicants to submit descriptions of their devices and other information necessary for the agency to determine whether the devices are substantially equivalent. . . . Pre-Market Notification applicants must also submit their proposed labeling. If the FDA determines that a device is substantially equivalent to a device that was on the market prior to the enactment of the [MDA] in 1976, the applicant is free to market the device.

*Fender v. Medtronic, Inc.*, 887 F. Supp. 1326, 1329 n. 1 (E.D. Cal. 1995). Resect's § 510(k) notification specifically described that "[t]he InLine Bi-Polar RF Linear Coagulation Device is

---

[3] Defendants argue that the claim is better characterized as one for false advertising, under 15 U.S.C. 1125(a)(1)(B). Under either section, plaintiff must show the elements of falsity, likelihood of confusion, and damages. Since this order finds that plaintiff fails to show probable success on the element of falsity under Section 1125(a)(1)(A), it is not necessary to address whether plaintiff should have pled the action under the provision for false-advertising claims.

4

designed for use with a standard FDA cleared RF generator, the RITA System Model 1500 or 1500X" (Daniel Decl. Exh. A).

In April 2004, the FDA responded favorably to Resect's Section 510(k) notification (*id*. at Exh. B):

> We have reviewed your Section 510(k) premarket notification of intent to market the device referenced above and have determined the device is substantially equivalent (for the indications for use stated in the enclosure) to legally marketed predicate devices.

The FDA provided that "[y]ou may, therefore, market the device, subject to the general controls provisions of the Act" (*ibid*.).

This FDA authorization casts doubt on the viability of plaintiff's Lanham Act claim, as the Lanham Act cannot be used as a circuitous route to challenge determinations of the FDA. "The MDA, enacted in 1976, gives the FDA comprehensive regulatory authority over medical devices. The Act puts into place an approval and regulatory process that varies in stringency according to the threat the device may pose to human health." *Fender*, 887 F. Supp. at 1329. "[C]ourts have found that the right to enforce the provisions of the FDCA lies exclusively within the federal government's domain, by way of either the FDA or the Department of Justice*." Summit Tech., Inc. v. High-Line Med. Instruments Co., Inc.*, 922 F. Supp. 299, 305 (C.D. Cal. 1996). Accordingly, the *Summit* court found that plaintiff could not bring a claim "that by failing to disclose that their re-imported used and/or modified Summit Excimer Laser Systems are not approved by the FDA, all Defendants have engaged in false advertising under § 43(a) of the Lanham Act." "To state a claim under § 43(a), the plaintiff was required to point to 'some claim or representation that is reasonably clear from the face of the defendants' advertising.' Absent this, the Lanham Act claim strayed too close to the exclusive enforcement domain of the FDA." *Id*. at 306 (quoting *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1139 (4th Cir. 1993)). "Simply put, the Lanham Act does not allow a federal court to 'determine preemptively how a federal agency will interpret and enforce its own regulations.'" *Ibid*. (internal citation omitted); *see also Creagri, Inc. v. USANA Health Sciences*, Case No. 03-3216, 2005 WL 181886, at *7 (N.D. Cal. Jan. 26, 2005) ("the Court lacks jurisdiction to consider a Lanham Act claim premised on a violation of FDA regulations").

5

Here, plaintiff's Lanham Act claim implicates a review of the FDA's April 2004 authorization determination. The FDA authorized Resect to market the InLine as described—that is, configured with Rita's RF generators. Even if Rita accurately alleges that Resect has been touting the InLine as compatible with Rita's generators, this Court would not be able to consider a claim as to the veracity of those representations without unduly converting the Lanham Act claim into a review of an FDA action. Such an analysis is not permitted. *Summit*, 922 F. Supp. at 306.

*       *       *

Even if plaintiff's Lanham Act claim is actionable, the FDA approval at the least casts extreme doubt on plaintiff's chance of success. As stated above, a false association claim under the Lanham Act requires a showing of falsity. 15 U.S.C. 1125(a)(1)(A).

Plaintiff's argue that defendants misrepresented the compatibility of the InLine with Rita's RF generators. Yet the FDA authorized defendants to market the InLine device as configured with Rita's generators.

Moreover, plaintiff fails to present sufficient evidence of incompatibility to show a fair chance of success on the Lanham Act claim. Plaintiff has only identified two incidents, the purportedly failed surgeries at Brigham and at the University of Iowa, to support the conclusion that the InLine and Rita's generators are, in fact, incompatible. It is not clear why the failures occurred—it may be for an entirely different reason than incompatibility. Even if an interaction between the InLine and the generators "caused" the accidents, two negative incidents are not statistically significant enough to conclude that defendants made misrepresentations. Defendants have submitted no expert declarations to explain why the machines are incompatible or to verify that the two accidents occurred due the machines' incompatibility.

Finally, the evidence of the two incidents is inadmissible hearsay. Rather than providing declarations from the physicians actually present during the allegedly failed surgeries, plaintiff presents three declarations from *Rita employees*—two sales representatives and one manager—who purportedly heard reports about the accidents after the fact. Plaintiff argues that the rules for admissibility are relaxed on a motion for preliminary injunction, citing *Flynt*

6

*Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984). The rationale for permitting hearsay declarations in *Flynt*, however, was that the exigency of the motion made it prohibitive to seek first-hand declarations. That is not the case here. As explained above, plaintiff had months to obtain declarations from the actual participants in the failed surgeries. Plaintiff did not do so.

\*      \*      \*

Plaintiff also argues that defendants have made misrepresentations to customers blaming a Resect software update for the alleged incompatibility problems. Plaintiff contends that on several cases the InLine lost power or showed an "error message." Plaintiff contends that the customers were told by Resect representatives that the failures were caused by a software update to the Rita's generators devised to cause incompatibility. Rita explains that the software update was, in fact, independent of its generators' combination with the InLine.

Again, as to the alleged software misrepresentations, plaintiff fails to provide admissible evidence to show a chance of success that such representations were false, or that such representations *ever even occurred*. There was ample time for plaintiff to secure declarations and expert testimony to prove that plaintiff has a chance of success on the merits of its Lanham Act claim. Plaintiff failed to bring forth such evidence.

**2.    BALANCE OF HARDSHIPS.**

Given plaintiff's weak showing as to probability of success on the merits, plaintiff would need to make an overwhelming showing of hardship to warrant a preliminary injunction. *Stuhlbarg*, 240 F.3d at 840; *Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 917 (9th Cir. 2003) (en banc). Plaintiff has made no such overwhelming showing.

Plaintiff contends that it will suffer a loss of reputation and good will without a preliminary injunction. Plaintiff maintains that customers believe that Rita's generators are responsible for the machine failures and that the customers are even wrongly assuming that Rita makes the defective InLine devices. Plaintiff has simply not pointed to enough examples of this "harm" to enjoin defendants from making representations about the effectiveness of the InLine and its compatibility with the Rita generators. Plaintiff offers no admissible declarations

7

attesting to the purported failures of the InLine or confirming the purported confusion of customers. Resect, in contrast, has brought forth evidence that the FDA has authorized Resect to market the InLine configured with Rita's generators.

It is true that a court must also consider possible hardships to the public at large when ruling on a motion for preliminary injunction. *See Southwest Voter Registration Educ. Project*, 344 F.3d at 917 ("The district court must also consider whether the public interest favors issuance of the injunction"). Given the dearth of admissible evidence or expert testimony that the combination of the InLine and Rita's generators has caused harm or will cause harm in the future to ablation patients, this order finds that the public interest does not justify a preliminary injunction against defendants.

## CONCLUSION

For the foregoing reasons, plaintiff's motion is **DENIED**. Finding no further argument necessary, the hearing on this motion is hereby **VACATED**.

**IT IS SO ORDERED.**

Dated: July 17, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8